### HENRY A. GOULD CO. v. PENNSYLVANIA RUBBER CO.

(Circuit Court of Appeals, Second Circuit. January 8, 1912.)

#### No. 107.

SALES (§ 420*)—ACTION FOR BREACH OF CONTRACT—QUESTION FOR JURY.

In an action for breach of a contract for the sale of rubber, evidence examined, and *held* not to justify a submission to the jury of the question whether the contract had been so modified as to eliminate a requirement of strict conformity to samples.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1202; Dec. Dig. § 420.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by the Henry A. Gould Company against the Pennsylvania Rubber Company. From a judgment for plaintiff, defendant brings error. Reversed.

This cause comes here upon appeal from a judgment of the Circuit Court, Southern District of New York, entered upon the verdict of a jury in favor of defendant in error which was plaintiff below. The action was brought to recover for breach of a contract for delivery of rubber. Certain deliveries were made and accepted, but further lots of rubber delivered and tendered

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in satisfaction of the contract were rejected as not being in conformity to contract requirements. The price of rubber having meanwhile risen greatly, plaintiff claimed damages for the difference between the contract price and what it had to pay for rubber to supply its needs.

Theall & Beam (Alexander Thain, of counsel), for plaintiff in error.

Simpson, Thacher & Bartlett (Graham Sumner and Reeve Schley, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The court left it to the jury to say whether the sale was "by sample" or whether "it rested rather on the guaranty of pure washed Manicoba rubber regular grade than upon the sample."

The complaint declared on sale by sample.

Plaintiff moved to amend complaint to conform to proof, having tried his case on the "guaranty" theory. Such motion was granted.

Manifestly it was important to know which it was, as will appear from what took place at the close of plaintiff's case. Defendant then moved to dismiss the complaint on the ground (among others) that:

"There has been no evidence that would warrant the court in considering a question of submission to the jury of the sample which is the basis of the transaction and contract."

To this the court replied:

"I agree with you about that. The complaint, however, is broad enough to raise that warranty. I think in the present aspect of the case (probably meaning after amendment of the complaint) the plaintiff must rest on the warranty, but I think he has made the case out under the warranty."

In this last statement the court was correct; there was quite enough, if uncontradicted by defendant's proofs, to require a finding that defendant had not tendered rubber to make up the undelivered balance called for by the contract such as the "guaranty" (leaving the sample out of consideration) called for.

At the close of the testimony the court left the case to the jury on both theories. It charged that the liability of defendant was limited to the warranty of quality or condition contained in the letter of June 4, 1909—"unless the sale is held to be by sample." To this last clause defendant excepted. It also charged that, if the rubber tendered and rejected was not substantially similar to sample, then plaintiff was justified in rejecting it—with the caution that the jury were to follow that instruction only "if the jury are of the opinion from all the evidence that there was a sale by sample."

We cannot tell upon which theory the jury decided the case.

It is contended here that, the contract being in writing, its construction was for the court; that it evidences a sale by sample only; and that the jury should have been allowed only to decide whether the rubber tendered and rejected was or was not substantially similar to sample.

The contract is found in two letters. On June 4, 1909, defendant writes offering to sell rubber. The material parts of the letter read:

"We inclose sample No. 5530 of our uniform special grade washed Manicoba at $1.18; sample No. 5531 our extra grade at $1.15; sample No. 5532 our regular grade at $1.10; sample No. 5533 our good mercantile (sic., misprint for merchantable) grade at $1.05. Now we guarantee every pound to be pure washed Manicoba, each bale running same—Now please look over our samples—We own

19 tons extra
8 tons regular
9 tons merchantable

washed and we guarantee every pound to be absolutely pure washed Manicoba."

To this letter plaintiff replied on June 9, 1909:

"We have just wired you; 'will take No. 5532 at $1.10; 5533 at $1.05.' This refers to your No. 5532 regular grade $1.10, of which you have eight tons, and your No. 5533 merchantable grade $1.05, of which you have nine tons. Must be exactly as samples submitted."

In October, 1909, the contract was modified as follows: Defendant wrote October 23d:

"We are sending you 1,597 lbs. of regular Manicoba rubber washed, the balance of your contract for regular will go forward in a few days. * * * In regard to the contract for the merchantable grade, we are in hopes of hearing from you favorably as to shipping the regular quality instead of merchantable at $1.10, which was the price last June when we contracted with you. Our reason for this, as stated to you before, is that the merchantable grade is not obtainable. * * * We trust we will have your permission to ship the 9 tons of regular grade on the order for merchantable grade."

To this plaintiff replied October 25th:

"We will agree to allow you to fill our order for merchantable grade Manicoba with the regular grade at $1.10 per lb. You may, therefore, ship us nine tons of the regular grade in addition to the 870 pounds still due on the original contract for that grade."

Is there any ambiguity about this contract or the modification which would make it a question for the jury to decide upon testimony what was the intent of the parties? There is apparently some uncertainty as to whether long tons or short tons were bargained for; but the statements of the respective parties in their subsequent correspondence (see defendant October 23, 1909, plaintiff October 25, 1909, comparing them with statement of deliveries, and defendant November 30, 1910) conclusively show that the ton of 2,240 pounds was intended.

There is no suggestion anywhere in the proof that the samples referred to in the contract contained the admixture of any other kind of rubber than Manicoba. For aught that appears they were properly referred to as samples of different grades of pure Manicoba rubber. There is no ambiguity apparent on the face of the documents which make up the contract, as to the article contracted to be sold. It was to be absolutely pure washed Manicoba rubber of two different grades, its quality and character (including its capacity for vulcanizing, which seems to be a matter of importance with rubber bought to be manufactured) to be more particularly measured, defined, and

prescribed by the samples specifically referred to by number in the contract.

The samples were not merely exhibited as generally indicating the class of goods defendant dealt in. They were expressly made the touchstone by which the sufficiency of deliveries should be tested. "Must be exactly to sample submitted," was the plaintiff's own choice of words to express the intent of the parties. Nor is there any apparent ambiguity in the modification by which the 9 tons merchantable were to be 9 tons regular.

Although the written contract be thus unambiguous, it is, of course, competent to show conduct by the parties in carrying out the contract which would warrant the conclusion that they had mutually agreed to modify its terms in some particular. We do not find in the record sufficient to send the case to the jury on any such theory.

On January 26th defendant writes:

"What we claim is that the *original sample* was of the character of what we have sent you which has been accepted and what we have sent you, which has not been accepted (with the exception of 2 or 3 cases), but you are·setting up an arbitrary standard which is unjust to us. * * * Your test for vulcanizing would have to be made, if we allow that to be the test, with the samples of the goods we originally furnished you as samples," etc.

Again on January 29, 1910:

"We are willing, as we said before, to send you goods we believe are equal to your sample."

Again on February 5, 1910:

"Abandon the idea that you can claim from us a quality equal to an extra grade that was sent you when you were complaining so bitterly of our quality, which was a part of extra quality of washed rubber that will readily sell at $1.50 *and was not the original sample.*"

Again on November 30, 1910:

"The original sample was sent as a standard of what was washed Manicoba rubber, free from our admixture of other cheaper rubbers or substances, which was the sense of the word *pure.*"

Henry A. Gould, who conducted the business of the defendant, testified that he kept a sample of the rubber (of the same washing) of which sample was sent to plaintiff at the time the contract was entered into. He produced it, and it was put in evidence.

On November 20, 1910, plaintiff wrote:

"We have the samples upon which the contract was taken. * * * That which we have returned does not correspond with the samples."

Again on December 14, 1910:

"We did not keep the original sample of the regular grade on file after the completion of the original contract for that grade. We have, however, samples of the *other* two grades."

Plaintiff's treasurer testified that the rejection of shipments began on or about November 5, 1909, and that rejections between that date and January 15, 1910, were because the goods sent "did not come up to that sample," i. e., the original sample; that the sample was submitted as a sample of the first contract; and that while the first

contract was being delivered he saw the sample; but that it was lost some time between October and January.

Another officer of the plaintiff, who left its employ November 3, 1909, testified that he saw the original sample, that it was on the table in his office in July and August, 1909, but he did not know what became of it after he left; so far as he knew, he left it in the establishment. He also said:

"There was a table in my office on which these samples reposed until at such time it was sent deliveries were made in accordance with these samples and they were disposed of. It was my responsibility to keep these samples until the purpose of them had been accomplished. In other words, until the contract had been completed."

There is nothing in this testimony to warrant a finding that the contract was so modified as to eliminate the requirement of strict conformity to the samples.

We think the jury should have been told that the plaintiff had agreed to take rubber corresponding exactly to the samples, and cannot doubt they were embarrassed by having it left to them to determine whether or not "the bargain made between these parties rested rather on the guaranty of pure washed Manicoba rubber regular grade than upon the sample."

For this reason the judgment should be reversed.